Ned W. Branthover
**Abelman Frayne & Schwab**
666 Third Avenue, 10th Floor
New York, New York 10017
(212) 949-9022

William Levin
**LEVIN & DICTEROW**
301 Forest Avenue, Second Floor
Laguna Beach, California 92651
(949) 613-5131

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| Rousselot B.V.,<br><br>            Plaintiff,<br><br>      v.<br><br>St. Paul Brands, Inc., Advanced Pharmaceutical Services, Inc., A Q Pharmaceuticals, Inc., Cong ty co phan duoc pham Eco doing business as "ECO PHARMA JOINT STOCK COMPANY (VIETNAM), Dennis Nguyen-duy Ngo, Jimmy Ngo, Mailan Nguyen, Trang D. Nguyen a/k/a Tracy Nguyen,<br><br>            Defendants. | Case No. 8:19 cv-00458-DOC-ADS<br><br>Hon. David O. Carter<br><br><br>**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT ST. PAUL BRANDS' MOTION FOR COSTS AND STAY PURSUANT TO RULE 41(D) F.R.CIV.P. AND ATTORNEYS' FEES PURSUANT TO 28 U.S.C. SECTION 1927**<br><br>Date:      June 3, 2019<br>Time:      8:30 a.m.<br>Courtroom: 9D |

**Plaintiff's Memorandum of Law in Opposition
to Defendant St. Paul Brands' Motion for Costs
And Stay Pursuant to Rule 41(d) F.R.Civ.P. and
Attorneys' fees Pursuant to 28 U.S.C. Section 1927**

i

# TABLE OF CONTENTS

**PAGE(S)**

**TABLE OF AUTHORITIES** .................................................................. iii

**Introduction** ........................................................................................... 1

**Facts** ....................................................................................................... 2

    A. Plaintiff and its PEPTAN Collagen Products Business ......... 2

    B. Defendant St. Paul Brands' Activities ................................... 3

**Procedural History** ................................................................................ 5

**Argument** ............................................................................................... 6

    Defendant St. Paul Brands' Motion Pursuant To Rule 41(d)
    For Costs Including Attorney's Fees Should Be Denied
    Because Plaintiff Had Good Reason To Dismiss The New York
    Action And Jurisdiction Was Proper So It Was Not A
    Vexatious Law Suit ................................................................. 6

    NGO Declaration Shows An Agency/Alter Ego
    Relationship Between Defendant St. Paul Brands And
    Defendant ECO Pharma Which Caused Plaintiff To
    Dismiss NewYork Action And Refile Action In California To
    Obtain Jurisdiction Of Eco Pharma ....................................... 8

    Jurisdiction In New York Action Was Proper Pursuant To
    N.Y. CPLR Section 302(a)(3) ................................................ 10

    Legal Test For Personal Jurisdiction In New York Action ......... 11

    NY CPLR Section 302(a)(3)(ii) .............................................. 12

    Court's Discretion Should Be Guided By Equitable
    Consideration That Favor Plaintiff In Denying This
    Motion ..................................................................................... 17

    The Attorneys' Fees of $62,443.50 Requested by Defendant
    Are Unreasonable .................................................................... 17

    Defendant's Request For Attorneys' Fees For The Instant
    Motion Pursuant To 28 U.S.C. Section 1927 Should be
    Denied because There is No Showing of Bad Faith ................... 19

**Conclusion** ............................................................................................ 20

# TABLE OF AUTHORITIES

**CASES**                                                                 **PAGE(S)**

*Aloha Airlines, Inc.*, 2007 U.S. Dist. LEXIS 97678, 2007
   WL 2320672 at 4 ........................................................... 18

*American Network, Inc. v. Access America/Connect*,
   975 F. Supp. 494 (S.D.N.Y. 1997) ..................................... 13, 14

*Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*,
   305 F.3d 120 (2d Cir. 2002) ............................................. 7, 13

*Bensusan Restaurant Corp. v. King*, 126 F.3d 25 (2d Cir. 1997) ......... 14

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 105 S.Ct.
   2174 (1985)................................................................. 15

*Capitol Records, LLC v. VideoEgg, Inc.*, 611 F.Supp.2d 349
   (S.D.N.Y. 2009)........................................................... 13, 14

*Daimler A.G. v. Bauman*, 571 U. S. 20, 134 S. Ct. 746 (2014) ............ 7

*DiStefano v. Carozzi North America, Inc.*, 286 F.3d 81
   (2d Cir 2001) .............................................................. 11

*Energy Brands, Inc. v. Spiritual Brands, Inc.*, 571 F. Supp. 2d
   458 (S.D.N.Y. 2008) ..................................................... 13

*Esquivel v. Arau*, 913 F.Supp. 1382 (C.D.Cal. 1996) ........................... 6, 7, 18

*G.C. & K.B. Investments, Inc. v. Fisk, No.* CIV.A. 01-1256, 2002
   WL 27772, at *7 (E.D. La. Jan. 8, 2002) ............................. 7

*Goodyear Tire Operations v. Brown*, 564 U.S. 915,
   131 S. Ct. 2846 (2011) .................................................. 7

*Grand River Enters. Six Nations, Ltd. v. Pryor*, 425 F.3d 158
   (2d Cir. 2005) ............................................................. 11

*Gucci America, Inc. v. Frontline Processing Corp.*,
   721 F. Supp. 2d 228, (S.D.N.Y. 2010) ............................... 13, 14, 16, 17

**CASES**                                                             **PAGE(S)**

*Holt v. Kormann*, 2012 U.S. Dist. LEXIS 1643339
    (C.D. Cal. 2012)................................................................. 18

*Kernan v. Kurz-Hastings, Inc.* 175 F.3d 236 (2d Cir. 1999) ................ 11, 12, 13, 15, 16, 17

*LaMarca v. Pak-Mor Mfg.*, 95 N.Y. 2d 210,
    713 N.Y.S. 2d 304, (2000) ................................... 12, 14

*Loubier v. Modern Acoustics, Inc.*, 178 F.R.D. 17 (D. Conn. 1998) ..... 7

*Mario Valente Collezioni, Ltd. v. Confezioni Semeraro Paolo*, S.R.L.,
    264 F.3d 32, (2d. Cir. 2001) ............................................. 16

*Metropolitan Life Insurance Company v. Robertson-Ceco Corp.*,
    84 F.3d 560 (2d Cir. 1996) ............................................. 12, 15, 16, 17

*PDK Labs, Inc. v. Friedlander*, 103 F.3d 1104 (2d Cir. 1997). ............. 11

*Palace Exploration Co. v. Petroleum Dev. Co.*, 41 F.Supp. 2d. 427
    (S.D.N.Y. 1998)................................................................. 15

*Parker Waichman Alonso LLP v. Orlando Firm, P.C.*, No. 09 Civ. 7401
    (CM), 2010 WL 1956871, at 9 (S.D.N.Y. May 14, 2010) ................ 13, 14, 15, 17

*Ravelo-Monegro v. Rosa,* 211 F.3d 509 (9th Cir.2000), <u>cert</u> <u>denied</u>
    133 S. Ct. 1996 (US 2013) ................................................. 7

*Simone v, First Bank National Association*,
    971 F.2d 103 (8th Cir. 1992) ............................................. 7

*Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC*,
    450 F.3d 100, (2d.Cir. 2006) ............................................. 12

*Sunward Elecs. Inc. v. McDonald*, 362 F.3d 17 (2d Cir. 2004)............. 12

1

**CASES**                                                                 **PAGE(S)**

2

3

*United Transportation Union v. Maine Central Railroad Corp.*,

4

   107 F.R.D. 391 (D. Me. 1985) ............................................................ 6

5

*Wahl v. City of Witchita*, 701 F. Supp. 1530 (D. Kan. 1988) ................ 6

6

*Wiwa v. Royal Dutch Petroleum Co.*, 226 F.3d 88   (2d Cir. 2000) ...... 11

7

Statutes

8

28 U.S.C. Section 1927 ........................................................................ 20

9

Federal Rules of Civil Procedure

10

Fed. R. Civ. P. 41(d) ........................................................................... 1, 6, 18

11

Treatise

12

*Charles Alan Wright & Arthur R. Miller*, Federal Practice and

13

   Procedure § 2375 (2d ed. 1987) ........................................................ 7

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Introduction**

Plaintiff Rousselot B.V. ("Plaintiff" and "Rousselot") submits this memorandum of law and accompanying declaration of Ned W. Branthover dated April 18, 2019 ("Branthover Dec. ") in opposition to Defendant St. Paul Brands' ("St. Paul Brands") motion for costs including attorneys' fees and a stay pursuant to Rule 41(d) of the F.R. Civ. P. in the amount of $62,443.50 based upon Plaintiff dismissing the New York action for trademark infringement and re-filing this same action in California.

Plaintiff Rousselot had proper jurisdiction in New York, but dismissed and re-filed in California, to obtain jurisdiction over Defendant Cong ty co phan duco pham d.b.a. Eco Pharma Joint Stock Company Vietnam ("Eco Pharma"), a Vietnamese company, after Defendant St. Paul Brands filed a motion to dismiss. That motion included the Declaration of Defendant St. Paul Brands' president Jimmy Ngo, showing that Defendant St. Paul Brands is an agent and alter ego for Defendant Eco Pharma. Together, they are committing trademark infringement of Plaintiff Rousselot's PEPTAN trademark in the United States and globally.

Acting cooperatively, Defendant Eco Pharma intentionally obtained Vietnamese Trademark Registrations for PEPTAN, while Defendant St. Paul Brands was a customer of Plaintiff Rousselot's PEPTAN collagen. Then Defendant Eco Pharma directed the design and manufacture of the infringing PEPTAN product by Defendant St. Paul Brands in California using English language labels marked "Made in USA". Their plan comprised Defendant Eco Pharma facilitating the re-selling of these infringing PEPTAN goods from its base in Vietnam, through e-commerce websites such as eBay and Amazon in the United States and elsewhere while Defendant St. Paul Brands advertises and promotes the sales of these infringing PEPTAN goods on its U.S. website in the United States. A sample of

Defendants' infringing PEPTAN product and Defendant St. Paul Brands' website are attached as Branthover Dec. Exhibits O and R.

**Facts**

    **A. Plaintiff and its PEPTAN® Collagen Products Business**

    Plaintiff Rousselot B.V. is a Netherlands company based in the Netherlands and is wholly owned subsidiary of Darling Ingredients, Inc., a publicly traded company listed on the New York Stock Exchange. Branthover Dec. ¶ 3. Rousselot manufactures the world's leading collagen brand PEPTAN which is a unique bioactive protein used in many applications, from functional foods and drinks to protein bars, anti-aging skin solutions and dietary supplements. Branthover Dec. ¶ 4. A full description can be found at Rousselot's website at: https://www.rousselot.com/products-solutions/peptan-collagen-peptides/ and at: https://www.peptan.com/. A copy of these website pages are attached as Branthover Dec. ¶ 5, Exhibit A.

    Rousselot owns the incontestable U.S. Trademark Registration No. 4047500 for PEPTAN. Branthover Dec. ¶ 6 Exhibit B.

    Rousselot has been advertising, selling and shipping PEPTAN collagen in the United States since 2009 and annual sales are in the tens of millions of dollars. Branthover Dec. ¶8.

    In addition to the United States, Rousselot owns the trademark PEPTAN worldwide including in all other major English speaking markets such as Australia, the United Kingdom and Canada as well as the European Union. Copies of these PEPTAN trademark registrations are attached hereto as Branthover Dec. ¶ 7 Exhibit C.

Rousselot has developed an enviable good will and reputation for the impeccable quality of the products associated with the PEPTAN trademark. Branthover Dec. ¶ 8.

**B. Defendant St. Paul Brands' Activities**

Defendant St. Paul Brands, a California corporation and located at 11555 Monarch St. Garden Grove, California, manufactures nutritional and dietary supplements and operates a US based website www.stpaulbrands.com  which advertises its products. Branthover Dec. ¶ 26.

Defendant St. Paul Brands claims on its website the following:

"At St. Paul Brands, we place specific emphasis on innovation and quality towards the research, development, manufacturing of proprietary nutritional blends of dietary supplements." . . . .

"Following Current Good Manufacturing Practices (cGMPs), we export our U.S. made products from Southern California to industry leaders that devote their efforts to providing the health-supporting benefits consumers are looking for." [underlined for emphasis] Branthover Dec ¶ 27.  Exhibit G.

In November 2013, Mailen Nguyen, an employee of Defendant St. Paul Brands met Rousselot at the Supply Side West Expo, a trade show, in Las Vegas Nevada.

Thereafter, in January 2014, Defendant Advanced Pharmaceutical Services, Inc.("Advanced Pharmaceutical") a related company to Defendant St. Paul Brands, began purchasing PEPTAN collagen from Rousselot for cosmetic-type products. Branthover Dec. ¶ 11 Exhibit E.

On November 19, 2014, Mailan Nguyen advised Rousselot that St Paul Brands was developing a new product, intended to help joint pain in humans, and requested information about PEPTAN B collagen, namely a bovine formulated

3

collagen, intended to be used as an ingredient in this new product. Branthover Dec. ¶ 12 Exhibit F.

During this time in 2014, St. Paul Brands was already making and selling a joint pain relief product called JEX which was being distributed by Defendant Eco Pharma. A copy of the St. Paul Brands' website showing the JEX product (without use of the PEPTAN trademark) is attached as Branthover Dec. ¶ 13 Exhibit G.

Beginning on or around November 2015, St. Paul Brands began making, advertising and selling the new and infringing named JEX PEPTAN MAX product. Branthover Dec ¶ 26 Exhibits O and Q.

St. Paul Brands uses the PEPTAN mark in the name JEX PEPTAN MAX without the authorization or consent of Rousselot.  Branthover Dec. ¶ 23 Exhibit O.

The JEX PEPTAN MAX product is available for purchase on the largest e-commerce websites such as eBay and Amazon as well as others. Branthover Dec ¶ 26 Exhibit Q.

Defendant St. Paul Brands owns U.S. trademark Registrations for JEX and the other products it displays on its website. Branthover Dec. ¶ 33 Exhibit S.

On or about October 4, 2018, Plaintiff, through an e-commerce website, purchased infringing JEX PEPTAN MAX products which were shipped to New York City.  Branthover Dec. ¶ 29 Exhibit R.

The infringing JEX PEPTAN MAX product comprises 30 capsules packaged in a bottle with a label bearing JEX PEPTAN MAX packaged in a box bearing JEX PEPTAN MAX with a product insert which also includes this name.  Branthover Dec. ¶ 29-32 Exhibit R.

These purchased infringing JEX PEPTAN MAX products use the PEPTAN mark on the bottle label, and box packaging in at least 8 different locations. Branthover Dec. ¶ 30 Exhibit R.

On or about February 13, 2017, Rousselot sent a letter to St. Paul Brands demanding that St. Paul Brands stop making, advertising and selling the JEX PEPTAN MAX product without the authorization and consent of Rousselot. A copy of the letter is attached as Branthover Dec. ¶ 35 <u>Exhibit T</u>.

St. Paul Brands through its attorneys sent a response dated February 22, 2017 refusing to comply with these requests. A copy of this letter is attached as Branthover Dec. ¶36 <u>Exhibit U</u>.  The parties exchange correspondences without reaching a settlement. Branthover Dec. ¶ 37.

**Procedural History**

On November 27, 2018 Plaintiff filed a civil action against Defendant Probactive Biotech, Inc, d.b.a. St. Paul Brands in the Southern District of New York entitled Rousselot B.V. v. Probactive Biotech, Inc. d.b.a. St. Paul Brands which was assigned 18 Civ 11058 alleging <u>inter alia</u> trademark infringement and unfair competition under federal and New York state law as well as common law. ("New York Action") A copy of the docket sheet for the New York Action is attached as Branthover Dec. ¶ 38 <u>Exhibit V</u>.

On December 28, 2018, Plaintiff filed an amended complaint which did not add any additional causes of actions.

On January 23, 2019, Defendant St. Paul Brands filed a motion to dismiss comprising a five (5) page declaration by the president of St. Paul Brands Jimmy Ngo, a two (2) page declaration by Defendant's local counsel Jacobsen and a memorandum of law. A copy of Defendant's motion to dismiss comprising declarations of Ngo and Jacobsen and a memorandum of law are attached as Branthover Dec. ¶ 40 <u>Exhibit W</u>. (Exhibit W-1 Memo) (Exhibit W-2 NGO Declaration) ( Exhibit W-3 Jacobson Declaration).

5

On January 24, 2019, Plaintiff Rousselot filed a Notice of Voluntary Dismissal of this action without prejudice pursuant to Rule 41 which was entered by the clerk on that same day.

On March 8, 2019, Plaintiff Rousselot filed this civil action for <u>inter</u> <u>alia</u> trademark infringement and unfair competition against Defendant St. Paul Brands and related California corporations AQ Pharmaceuticals, Inc. and Advanced Pharmaceutical. and four individual California residents who are principals and employees of the Defendant California corporations and family members: Tracy Nguyen, Dennis Nguyen duy Ngo, Mailan Nguyen and Jimmy Ngo ("Individual Defendants") as well as Eco Pharma.

On April 5, 2019 Defendant St. Paul Brands filed this motion for attorneys' fees and costs and for a stay pursuant to Rule 41(d) of the Federal Rules of Civil Procedure.

**Argument**

**Defendant St. Paul Brands' Motion Pursuant To Rule 41(d) For Costs Including Attorney's Fees Should Be Denied Because Plaintiff Had A Good Reason To Dismiss The New York Action And Jurisdiction Was Proper So It Was Not A Vexatious Law Suit.**

The language of Rule 41(d) clearly indicates that it conveys "broad discretion" on federal courts to order a stay and payment of costs, and that neither is mandatory. *United Transportation Union v. Maine Central Railroad Corp.*, 107 F.R.D. 391, 392 (D.Me. 1985); *Wahl v. City of Witchita*, 701 F. Supp. 1530 1533 (D. Kan. 1988), citing with approval, *Esquivel v. Arau*, 913 F.Supp. 1382 (C.D.Cal. 1996).  "The purpose of the rule is to prevent the maintenance of <u>vexatious</u> lawsuits and to secure, where such suits are shown to have been brought <u>repetitively</u>, payment of costs of prior instances of such vexatious conduct." *United*

*Transportation Union v. Maine Central Railroad Corp.*, 107 F.R.D. 391, 392 (D. Me. 1985). [underlined for emphasis]

A court may refuse to impose costs on the plaintiff if it appears that there was good reason for the dismissal of the prior action. *G.C. & K.B. Investments, Inc. v. Fisk*, No. CIV.A. 01-1256, 2002 WL 27772, at *7 (E.D. La. Jan. 8, 2002) (citing 9 *Charles Alan Wright & Arthur R. Miller*, Federal Practice and Procedure § 2375 (2d ed. 1987). The court in exercising its discretion may consider the plaintiff's motive in dismissing the prior action. *Loubier v. Modern Acoustics, Inc.* 178 F.R.D. 17 (D. Conn. 1998).

Here, Plaintiff dismissed the New York Action upon learning that Defendant St. Paul Brands is an agent and alter ego for Defendant Eco Pharma to obtain jurisdiction of Defendant Eco Pharma in California. Defendant Eco Pharma is "at home" in California in view of its systematic control over Defendant St. Paul Brands performing the acts that constitute trademark infringement in California. *Goodyear Tire Operations v. Brown* 131 S. Ct. 2846, 2887 (2011) and *Daimler A.G. v. Bauman*, 571 U. S. 20, 134 S. Ct. 746 (2014). Moreover, this dismissal is not a case of vexatious litigation or forum shopping since Plaintiff only filed one prior action against Defendant St. Paul Brands in New York where it had personal jurisdiction. *Simone v. First Bank National Association* 971 F.2d 103, 108 (8th Cir. 1992) citing with approval *Esquivel* 913 F.Supp. at 1386.

In fact, Plaintiff exercised its discretion to file the New York Action to enforce its trademark rights in a venue of its choosing with proper personal jurisdiction. It has long been held that a plaintiff's choice of venue should be given deference even when the plaintiff is a foreign corporation. *Ravelo-Monegro v. Rosa* 211 F.3d.514 (9th Cir.2000), cert denied 133 S.Ct. 1996 (U.S. 2013).

Defendant in support of its position cites *Esquivel v. Arau*, 913 F.Supp. 1382 (C.D.Cal. 1996). *Esquivel* is distinguishable because the plaintiff did not have a

good reason to dismiss the prior suit, nor was there any basis to claim jurisdiction in the originally filed action in New York.

**NGO Declaration Shows An Agency/Alter Ego Relationship Between Defendant St. Paul Brands And Defendant ECO Pharma Which Caused Plaintiff To Dismiss New York Action And Re-File Action In California To Obtain Jurisdiction Of Eco Pharma.**

Defendant St. Paul Brands submitted the declaration of Jimmy Ngo who is the president and secretary of St. Paul Brands in support of its motion to dismiss the New York Action. Branthover Dec. ¶ 40 <u>Exhibit W</u>.  The Ngo declaration makes the following statements that show St. Paul Brands is the alter ego and agent for Eco Pharma:

Ngo Declaration Par. 5- "<u>The labeling for JEX [PEPTAN] MAX is designed according to the specifications of ECO Pharma,</u> and upon information and belief, is in accordance with the laws of the Vietnam and has been approved by the Ministry of Health in Vietnam. The JEX [PEPTAN] MAX product has always been manufactured exclusively for export to Vietnam."

Ngo Declaration Par. 10- "<u>St. Paul has never sold the JEX [PEPTAN] MAX product, or any product, to any customer except for ECO Pharma, which is located in Vietnam. Upon information and belief, ECO Pharma resells the JEX [PEPTAN] MAX and St Paul's other products at retail in Vietnam to further downstream customers</u>."

Ngo Declaration Par. 14- "<u>Upon information and belief</u>, St. Paul is authorized by ECO Pharma to import JEX [PEPTAN] MAX product into Vietnam, and <u>to the extent that the JEX [PEPTAN] MAX product includes the term "Peptan" on its product labeling and packaging, ECO Pharma has authorized and granted St. Paul a license to do so</u> in connection with ECO Pharma's right under Vietnamese

law to control importation of products bearing the term "Peptan" in Vietnam."[underlined for emphasis]

The Ngo declaration shows that St. Paul Brands is making the infringing PEPTAN product exclusively for and at the direction of Eco Pharma. This evidence also shows that the St. Paul Brands and Eco Pharma did not have a typical manufacturer and distributor relationship since a distributor does not normally dictate the design of a product and have a global exclusivity on all products, particularly when the distributor only sells to Vietnam.

When you combine this information with the following facts, it shows that Defendant St. Paul Brands is the alter ego and agent of Defendant Eco Pharma and they are acting in concert to infringe the PEPTAN mark in the United States:

1. Defendant Eco Pharma, who has a commercial relationship with Defendant St. Paul Brands, filed its Vietnamese PEPTAN trademark applications on November 26, 2014 after Defendant St. Paul Brands began purchasing PEPTAN collagen from Plaintiff in January, 2014. Branthover Dec. ¶ 11, 16.

2. Defendant St. Paul Brands advertises the infringing JEX PEPTAN MAX product on its U.S. based website. Branthover Dec. ¶ 23 Exhibit O.

3. Defendant St. Paul Brands owns U.S. trademark registrations for its brand names, such as JEX, for products it claims are only exported to Vietnam. Branthover Dec. ¶ 33 Exhibit S.

4. Defendant St. Paul Brands uses these U.S. trademark registrations to protect its brands so that these products can be re-sold in the United States through Defendant Eco Pharma.

5. Defendant Eco Pharma has registered and is the owner in Vietnam of all of Defendant St. Paul Brands trademarks in the U.S. Branthover Dec. ¶44 Exhibit X.

6. Defendant St. Paul Brands' website links to Defendant Eco Pharma's website which shows the JEX PEPTAN MAX product and references Plaintiff Rousselot's scientific research and Rousselot's name. Branthover Dec. ¶50-52 Exhibits Z and AA.

These facts show that Defendant St. Paul Brands is Defendant Eco Pharma's alter ego and agent. The parties are acting cooperatively and in concert to pirate the PEPTAN mark and are using Vietnam as a safe haven to sell infringing PEPTAN product to the U.S. and globally with the legal imprimatur "Made in U.S.A.". Moreover, Defendant St. Paul Brands is a family business operated by the Individual Defendants all of whom reside in California. This is an additional reason Plaintiff wanted to re-file this action in California since they may have a connection with Defendant Eco Pharma.

**Jurisdiction In New York Action Was Proper Pursuant To N.Y. CPLR Section 302(A)(3)**

Defendant St. Paul Brands has the following contacts which shows that there was proper personal jurisdiction in the New York Action pursuant to CPLR Section 302(a)(3):

a. Defendant St. Paul Brands operated the website www.stpaulbrands.com which could be viewed in New York and which advertises the infringing JEX PEPTAN MAX product in New York.

b. Defendant St. Paul Brands manufactures and labels the JEX PEPTAN MAX product in English that it exports to "industry leaders" including Eco Pharma.

c. Defendant St. Paul Brands ships JEX PEPTAN MAX product to Vietnam in English label packaging marked "Made in U.S.A." knowing that these products would be re-sold on major e-commerce sites such as eBay and Amazon for sale in English speaking markets such as the United States including New York.

10

d.  Plaintiff purchased Defendant St. Paul Brands' JEX PEPTAN MAX product through an e-commerce website that was shipped to New York City.

e.  Defendant St. Paul Brands owns U.S. trademark registrations for JEX and for brands of its other products which shows that Defendant St. Paul Brands is using these marks in commerce in the United States.

**Legal Test For Personal Jurisdiction In New York Action**

The Plaintiff bears the burden of showing that the court has jurisdiction over the defendants. See *Grand River Enters. Six Nations, Ltd. v. Pryor*, 425 F.3d 158, 165 (2d Cir. 2005); *Kernan v. Kurz-Hastings, Inc.* 175 F.3d 236, 240 (2d Cir. 1999).  The court can rely on pleadings and affidavits, rather than conducting an evidentiary hearing and the plaintiff need only make a prima facie showing that the court possesses personal jurisdiction over the defendant. *DiStefano v. Carozzi North America, Inc.* 286 F.3d 81, 84 (2d. Cir 2001). Moreover, the pleadings and affidavits should be construed in plaintiff's favor and personal jurisdiction is a fact sensitive inquiry dependent on the particulars of the case before the court. See, *PDK Labs, Inc. v. Friedlander* 103 F.3d 1104, 1108 (2d Cir. 1997).

Pursuant to the Federal Rules of Civil Procedure, "[a] court may exercise jurisdiction over any defendant who could be subject to the jurisdiction of a court of general jurisdiction in the state in which the district court is located." *Wiwa v. Royal Dutch Petroleum Co.*, 226 F.3d 88, 94 (2d Cir. 2000), Fed R.Civ. P. 4(k)(1)(a). "Where a defendant resides outside the forum state, a federal court applies the forum state's personal jurisdiction rules if the federal statute does not specifically provide for national service of process." *PDK Labs*, 103 F.3d at 1108, see also *Sunward Elecs. Inc. v. McDonald*, 362 F.3d 17, 22 (2d Cir. 2004).  The jurisdictional analysis is a two- step inquiry. First, the court must determine

whether the plaintiff has shown that the defendant is amenable to service of process under the forum state's laws. Second, the court must assess whether the assertion of the jurisdiction comports with the requirements of constitutional due process. See, e.g. *Kernan* 175 F. 3d at 240; *Metropolitan Life Insurance Company v. Robertson-Ceco Corp.*, 84 F.3d 560, 567 (2d Cir. 1996)

**NY CPLR Section 302(a)(3)(ii)**

New York's long-arm jurisdiction statute provides for service of process for defendants based on both general and specific jurisdictional grounds. Here, jurisdiction is available pursuant to NY CPLR Section 302(a)(3)(ii), for a tortious act committed outside the state that causes injury within the state. Jurisdiction pursuant to this Section is predicated on five elements: "(1)[t]he defendant committed a tortious act outside the state; (2) the cause of action arose from that act; (3) the act caused injury to a person or property within the state; (4) the defendant expected or should reasonably have expected the act to have consequences in the state; (5) the defendant derives substantial revenue from interstate or international commerce." *Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC*, 450 F.3d 100, 106 (2d. Cir. 2006) (citing *LaMarca v. Pak-Mor Mfg.*, 95 N.Y. 2d 210, 214, 713 N.Y.S. 2d 304, (2000) see also *Kernan* 175 F. 3d at 241.

These elements are met in this case, particularly based on the limited burden required at this stage. Rousselot alleges that the Defendant St. Paul Brands has committed acts of trademark infringement. (See, Complaint).  The plaintiff need not actually prove that the defendant committed a tort to satisfy the first element of Section 302(a)(3)(ii), "but rather need only state a colorable cause of action." *Sole Resort*, 450 F.3d at 106 (quoting *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 305 F.3d 120, 125 (2d Cir. 2002).

First, trademark infringement is a tort for jurisdictional purposes, and the situs of this tort is considered to be where the website, or servers which maintain the website are located. See *Parker Waichman Alonso LLP v. Orlando Firm, P.C.* No. 09 Civ. 7401 (CM), 2010 WL 1956871, at 9 (S.D.N.Y. May 14, 2010) (citing, inter alia *Energy Brands, Inc. v. Spiritual Brands, Inc.*, 571 F. Supp. 2d 458, 470-1 (S.D.N.Y. 2008). Here, the Defendant St Paul Brands has a business address in Garden Grove, California and operates a website there at www.stpaulbrands.com. In addition, St. Paul Brands manufactures and labels the infringing JEX PEPTAN MAX product in Garden Grove, California.

Secondly, the causes of action for <u>inter</u> <u>alia</u> trademark infringement arises out of Defendant St. Paul Brands advertising, making, offering for sale and selling the infringing JEX PEPTAN MAX products in Garden Grove, California.

Third, Plaintiff has been injured in New York because the JEX PEPTAN MAX advertising on the St. Paul Brands website can be viewed in New York which can cause confusion and loss of Plaintiff's reputation in New York. *American Network, Inc. v. Access America/Connect* 975 F. Supp. 494, 497 (S.D.N.Y. 1997). In addition, sales of infringing products in New York through e-commerce sites such as Amazon and eBay, damage Plaintiff's reputation and constitute lost sales in New York. *Gucci America, Inc. v. Frontline Processing Corp.*, 721 F. Supp. 2d 228, 242-243 (S.D.N.Y. 2010). (Branthover Dec. ¶ 26 and 29 Exhibits Q and R).

Fourth, Defendant St. Paul Brands should have reasonably expected consequences in New York. The test for whether a defendant expects or should reasonably expect his acts to have consequence within the State is an objective one. *Kernan*, 175 F.3d at 241; see also *Capitol Records, LLC v. VideoEgg, Inc.*, 611 F.Supp.2d 349, 363 (S.D.N.Y. 2009). This foreseeability requirement "relates to the forum consequences generally and not to the specific even which produced the injury within the state." *American Network, Inc.*, 975 F.Supp. at 497, see also

13

*LaMarca*, 95 N.Y.2d at 215, 713 N.Y.S. 2d 304. In other words, it "requires that a defendant foresees that its tortious act will have some consequences in New York, although not necessarily the exact consequences that occurred". "*Capitol Records*, 611 F.Supp.2d at 363. The purpose of this element is to "ensure some link between a tortious conduct committed elsewhere." *LaMarca* 95 N.Y.2d at 215, 713 N.Y.S. 304.

Here, St. Paul Brands expected or should have expected that advertising the infringing product on its website in California would be viewed by customers in New York. *American Network* 975 F. Supp at 497. Moreover, St. Paul Brands should have known that by labeling the infringing JEX PEPTAN MAX product in English, marking it with "Made in USA", and exporting these products to "industry leaders" and Eco Pharma in Vietnam that these same products would be sold on internet e-commerce sites in the United States and in particular New York. *Gucci America* 721 F. Supp. 2d at 243-44). Branthover Dec. ¶ 26 and 29. Indeed, there can be no doubt that Defendant St. Paul Brands intended this to be the case when it concocted its plan with Defendant Eco Pharma to pirate the PEPTAN brand.

Fifth, it is also clear that the Defendant St. Paul Brands derives substantial revenue from interstate or international commerce. The requirement for interstate commerce is intended to exclude foreign businesses that "are of a local character." *Bensusan Restaurant Corp. v. King*, 126 F.3d 25, 29 (2nd Cir. 1997). No specific dollar threshold is required for the revenue to be deemed substantial, and the main concern is the "overall nature of the defendant's business and the extent to which he can fairly be expected to defend lawsuits in foreign forums." *Parker Waichman*, 2010 WL 1956971 at 11. Revenue from interstate and international commerce may be analyzed as a percentage of total revenues, or as an absolute number, but neither approach is binding and each case should be decided on its own facts. See *Palace Exploration Co. v. Petroleum Dev. Co.*, 41 F.Supp. 2d. 427, 436 (S.D.N.Y. 1998).

Defendant St. Paul Brands holds itself out as an international company that sells to the "industry leaders" around the world.  On this basis Defendant St. Paul Brands is not a small local company, but an international company which derives substantial revenue from this commerce. Branthover Dec. ¶ 47. In particular, Defendant St. Paul Brands informed Plaintiff that it had the largest selling nutritional supplement product in Vietnam and had several others on the top list which are sold in the millions of U.S. dollars. Branthover Dec. ¶ 48 Exhibit Y.

In addition, to satisfy the statutory elements for personal jurisdiction, the Plaintiff must also demonstrate that the jurisdictional reach satisfies constitutional due process. The due process inquiry contains two parts: the minimum contacts inquiry, and the reasonableness inquiry. See *Parker Waichman*, 2010 WL 1956871, at 6 see also *Kernan*, 175 F.3d at 242("The due process clause of the Fourteenth Amendment permits a state to exercise personal jurisdiction over a non-resident defendant with whom it has certain minimum contacts. . . .  such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.") (internal quotations omitted). This protection "gives a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit." *Metropolitan Life*, 84 F.3d at 567 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471-72, 105 S.Ct. 2174 (1985)). A court must balance the strengths of the two due process requirements: "depending upon the strength of the defendant's contacts with the forum state, the reasonableness component of the constitutional test may have greater or lesser effect on the outcome of due process inquiry." *Metropolitan Life* 84 F.3d at 568.

(a) Minimum Contacts and Purposeful Availment

"Specific jurisdiction is determined by first asking if the claim arises out of or relates to the defendant's contacts with the state, and then showing defendants

purposefully availed itself of the privilege of doing business in the forum so that the defendant could reasonably foresee being haled into the forum's court." *Mario Valente Collezioni, Ltd. v. Confezioni Semeraro Paolo, S.R.L.*, 264 F.3d 32, 37-38 (2d. Cir. 2001) (citing *Kernan*, 175 F.3d at 242-43). Plaintiff's pleadings and declarations are sufficient to demonstrate that the Defendant St. Paul Brands has minimum contacts with New York and purposefully availed itself of the benefits of this forum and should have foreseen that it could be haled into court in New York.

Defendant St. Paul Brands' United States based website is in English and can be viewed in New York. Moreover, St. Paul Brands manufactures product with English language labeling and packaging, marked "Made in USA" on its website Defendant St. Paul Brands represents that it sells to Eco Pharma in Vietnam, as well as "Industry Leaders" who no doubt, will be re-selling these products in New York, as well as posting these products for sale on the top internet e-commerce websites such as Amazon and eBay that attract customers in the United States and New York.

There can be no doubt that is exactly what Defendant St. Paul Brands intended. Otherwise, there is no need to advertise the JEX PEPTAN MAX product on the defendant St. Paul Brands' website or to use all English language on its bottle labels. A company cannot disclaim its knowledge of the potential locations for the sale of its products by others. *Gucci America* 721 F. Supp. 2d at 244.

(b) Reasonableness

To satisfy due process, Rousselot must also demonstrate that the assertion of jurisdiction "comports with traditional notions of fair play and substantial justice. . . that is, whether it is reasonable under the circumstances of the case." *Kernan*, 175 F.3d at 243 (quoting *Metropolitan Life*, 84 F.3d at 568).

Five factors are considered to determine the reasonableness of the jurisdiction:(1) the burden of jurisdiction on the defendant; (2) the interest of the

forum in adjudicating the case; (3) the plaintiff's interest in convenient and effective relief; (4) the judicial system's interest in obtaining the most efficient resolution of the disputes; and (5) the shared interests of the states in furthering "social substantive policies." See *Kernan* 175 F. 3d at 243; see also *Parker Waichman*, 2010 WL 1956871, at 7.

Where the other elements for jurisdiction have been met, dismissals of reasonableness grounds should be "few and far between." See *Metropolitan Life*, 84 F.3d at 575. The facts as alleged and shown in the attached declarations show that jurisdiction in New York would be reasonable in this case. *Gucci America* 721 F. Supp. 2d at 245-46.

**Court's Discretion Should Be Guided By Equitable Considerations That Favor Plaintiff In Denying This Motion**

The Court in exercising its discretion should take into consideration the equitable circumstances of this case which shows that Defendant St. Paul Brands is willfully infringing Plaintiff's PEPTAN trademark on a global scale.

Plaintiff Rousselot is incurring the costs of litigation for enforcing its trademark rights caused solely by the bad faith actions of Defendant St. Paul Brands and its co-conspirators in taking Plaintiff's trademark PEPTAN without authorization and trading on the good will of this mark in the United States and globally. Plaintiff Rousselot attempted to resolve this dispute short of litigation, yet Defendant St. Paul Brands refuses to cooperate because it has insulated itself from prosecution by creating this shell game as the agent and alter ego of Defendant Eco Pharma.  Under these circumstances, it would be inequitable to award costs and to stay this proceeding when Plaintiff Rousselot is acting in good faith to enforce its trademark rights.

**The Attorneys' Fees of $62,443.50 Requested by Defendant Are Unreasonable**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

If the Court decides to award costs, which includes attorneys' fees, then Defendant St. Paul Brands' request for $62,443.50 which represents all the attorneys' fees billed to Defendant St. Paul Brands for the New York Action, without taking any deductions for work that translates to the present case is inherently unreasonable. Under Rule 41(d), courts are not to award costs associated with past work that will still be useful to defendants in the present litigation. *Aloha Airlines, Inc.*, 2007 U.S. Dist. LEXIS 97678, 2007 WL 2320672, at 4. *Holt v. Kormann* 2012 U.S. Dist. LEXIS 1643339 (C.D. Cal. 2012). See *Esquivel*, 913 F.Supp. at 1392('[D]efendants are entitled to both expenses and attorneys' fees that are reasonably incurred and that will not contribute toward defendants' defense in the present action").

Here, Defendants' attorneys are seeking four lawyers time for a case that lasted only two (2) months in which the only substantive responsive pleading filed by Defendant St. Paul Brands was a motion to dismiss. In addition, Defendants' attorneys repeatedly claim that all the legal fees incurred in the New York Action are appropriate to be awarded since none of this work translates to the present litigation and yet this action involves the same primary claims of trademark infringement and unfair competition under federal law.

The Defendant claims that Mr. Carlson worked 71.9 hours at $260/hour and Mr. Newboles worked 9.6 hours at $430/hour to prepare the motion to dismiss which comes to $18,940. This motion comprises a five (5) page declaration by Jimmy Ngo, a two (2) page declaration by Jefferey Jacobson and a twenty-five (25) page supporting memorandum of law. ("Memo") The Memo comprises basically three (3) pages of facts and fourteen (14) pages arguing that there is no personal jurisdiction in New York and venue is improper and the next nine (9) pages arguing that plaintiff fails to state a claim and plaintiff's claims are barred by the doctrine of

fair use and the final one (1) page arguing plaintiff's third cause of action for Deceptive Trade Practices under New York law GBL Section 350.

In total, 15 of 25 pages of the Memo deal with only New York based law that does not translate to the present case. Therefore, approximately 60% of the memo represents work that does not translate so out of the total of $18,940, Defendants would be entitled to $11,216.40.  Newboles represents that he billed 9.6 hours on the motion to dismiss, but these total hours appear inaccurate. Plaintiff sees the following relevant billing for Mr. Newboles concerning the motion:

| Date | Hours |
| --- | --- |
| 12-6-18 | 1.0 |
| 1-4-19 | 4.4 |
| 1-8-19 | .8 |
| 1-9-19 | .5 |
| 1-23-19 | .9 |
| Total | 7.6 |

and not 9.6 hours; therefore, 2 hours should be deducted.

Plaintiff has been told by Defendant's counsel that it will file another motion to dismiss this action when its answer is due. It was also important to Defendant to schedule its answer to be due after the hearing date on this motion to conceal its intentions in order to avoid the logical conclusion that the attorneys' work for preparing that portion of the motion to dismiss the New York Action was transferable to this present action.

Defendant's bills also show that there were two local counsel and the total bills for local counsel were over $27,000 when lead counsel billed $32,372. Newboles Dec. P.6-7 Plaintiff notes that on December 10, 2018 Mr. Newboles makes reference to drafting an email to local counsel about avoiding duplication of effort. Newboles Ex. B Page 3 which shows double billing and the case was only pending for two months.

**Defendant's Request For Attorneys' Fees For The Instant Motion Pursuant To 28 U.S.C. Section 1927 Should Be Denied Because There Is No Showing Of Bad Faith**

Defendant fails to cite any case authority in support of its request that Plaintiff's counsel be personally liable for Defendant's attorneys' fees for making the instant motion. It has long been held that such an award must make a showing of bad faith. *New Alaska Dev. Corp. v. Guetschow* 869 F.2d 1298, 1306 (9th Cir. 1989). Accordingly, since Defendant fails to show bad faith then this request should be denied. Indeed, it is clear based on the forgoing that Plaintiff's counsel has acted in good faith, and Defendant does not offer any specific acts that can be construed as such other than Defendant's claim that the New York Action was improperly filed which Plaintiff has shown is without merit.

**Conclusion**

Based on the aforesaid, Plaintiff respectfully requests this court to deny Defendant Motion for Costs and for a stay in its entirety.

Date: April 18, 2019                    Respectfully Submitted,


                                        /Ned W. Branthover/
                                        Ned W. Branthover
                                        ABELMAN, FRAYNE & SCHWAB
                                        666 Third Avenue
                                        New York, New York 10017
                                        Tel: 212-949-9022
                                        Fax: 212 949-9190
                                        Email: nwbranthover@lawabel.com