Matthew A. Newboles (SBN 167,196)
Gregory K. Clarkson (SBN 298,712)
**STETINA BRUNDA GARRED & BRUCKER**
75 Enterprise, Suite 250
Aliso Viejo, California 92656
*mnewboles@stetinalaw.com*
*gclarkson@stetinalaw.com*
Tel: (949) 855-1246

Attorneys for Defendants
St. Paul Brands, Inc., Advanced Pharmaceutical Services, Inc., A Q Pharmaceuticals, Inc., Dennis Nguyen-Duy Ngo, Jimmy Ngo, Mailan Nguyen, Trang D. Nguyen a/k/a Tracy Nguyen

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

# SOUTHERN DIVISION

| | |
|---|---|
| Rousselot B.V., <br><br> Plaintiff, <br><br> v. <br><br> St. Paul Brands, Inc., Advanced Pharmaceutical Services, Inc., A Q Pharmaceuticals, Inc., Cong ty co phan duoc pham Eco doing business as "ECO PHARMA JOINT STOCK COMPANY (VIETNAM), Dennis Nguyen-duy Ngo, Jimmy Ngo, Mailan Nguyen, Trang D. Nguyen a/k/a Tracy Nguyen, <br><br> Defendants. | Case No. 8:19-cv-00458-DOC-ADS <br><br> Hon. David O. Carter <br><br> **REPLY IN SUPPORT OF MOTION TO DISMISS** <br><br> Date: July 15, 2019 <br> Time: 8:30 a.m. <br> Courtroom: 9D |

# **TABLE OF CONTENTS**

I. INTRODUCTION ...............................................................................................1

II. NO DIRECT TRADEMARK INFRINGEMENT ............................................2

    A. Direct Infringement Is Not Sufficiently Pled............................................2

    B. Extraterritoriality Bars Enforcement of the Lanham Act ........................4

    C. Nominative Fair Use Bars This Action.....................................................7

III. NO CONTRIBUTORY TRADEMARK INFRINGEMENT ............................7

    A. Intentional Inducement Is Not Sufficiently Alleged................................7

    B. "Continuing to Supply" Is Not Sufficiently Alleged ...............................8

IV. THE RELATED CAUSES OF ACTION ARE INSUFFICIENTLY PLED......9

V. DISMISSAL FOR VIOLATION OF RULE 8 IS APPROPRIATE...................9

VI. PLAINTIFF'S EVIDENCE IS INCOMPLETE AND OF NO AVAIL ..........12

VII. THE FALSE DESIGNATION OF ORIGIN CLAIM IS NOT PLED..............13

VIII. DISMISSAL AND DISCOVERY LIMITATIONS ARE REQUIRED ON CONSPIRACY ................................................................................................14

IX. CONCLUSION ...............................................................................................15

STETINA BRUNDA GARRED & BRUCKER
75 ENTERPRISE, SUITE 250
ALISO VIEJO, CALIFORNIA 92656
PHONE: (949) 855-1246

# TABLE OF AUTHORITIES

Cases

*Applied Underwriters, Inc. v. Licthenegger*, 913 F.3d 884 (9th Cir. 2019) .......................................................................................................... 7

*Ashcroft v. Iqbal, 556 U.S. 662 (2009)* .............................................................. 3, 11

*Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007)* .................................................. 3

*Daystar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23 (2008) ................................................................................................................ 13

*Department of Navy v. Egan*, 484 U.S. 518 (1988) ................................................ 5

*Entm't Res. Grp. Inc. v. Genesis Creative Grp., Inc*. 122 F.3d 1211 (9th Cir. 1997) ............................................................................................................. 14

*Fonavisa, Inc. v. Cherry Auction, Inc.*, 76 F.3d 269 (9th Cir. 1996) ...................... 9

*Gallup, Inc. v. Business Res. Bureau (PVT.) Ltd*, 688 F.Supp. 2d 915 (N.D. Cal 2015) ....................................................................................................... 8

*Gauvin v. Trombatore*, 682 F.Supp. 1067 (N.D. Cal. 1988) ................................. 10

*Gen-Probe, Inc. v. Amoco Corp.*, 926 F. Supp. 948 (S.D. Cal. 1996) ................... 10

*Gibson Guitar Corp v. Viacom Int'l, Inc.*, 2013 U.S. Dist. LEXIS 70538 (C.D. Cal 2013) ................................................................................................. 7

*Lockheed Martin Corp. v. Network Solutions, Inc.*, 194 F.3d 980 (9th Cir. 1999) ................................................................................................................. 9

*Marder v. Lopez*, 450 F.3d 445 (9th Cir. 2006) ............................................... 12, 13

*McHenry v. Renne*, 84 F.3d 1172 (9th Cir. 1996) ................................................. 11

*Perfect 10, Inc. v. Visa Int'l Serv. Ass'n,* 494 F.3d 788 (9th Cir. 2007) ............... 7, 8

*RJR Nabisco, Inc. v. European Cmty.*, 136 S. Ct. 2090 (2016) .............................. 6

*Smith v. Barrett, Daffin, Frappier, Treder & Weiss, LLP*, Case No. 18-cv-06098-RS (N.D. Cal. Jun. 19, 2019) ............................................................... 11

*Starr v. Baca*, 652 F.3d 1202 (9th Cir. 2011) .......................................................... 2

*Steele v. Bulova Watch Co.*, 344 U.S. 280 (1952) .................................................. 5

*Steinmetz v. Gen. Elec. Co.*, 2009 WL 3461133 (S.D. Cal. 2009) ........................ 10

*Trader Joe's v. Hallatt*, 835 F.3d 960 (9th Cir. 2016) ............................................ 6

*Yost v. Nationstar Mortg., LLC*, 2013 WL 4828590, at *3 (E.D. Cal. 2013) ............................................................................................................... 10

Statutes

Federal Rule of Evidence 106 .................................................................................. 12

FRCP Rule 12(b)(6) ........................................................................................ 13, 14

## I. INTRODUCTION

Plaintiff seeks adjudication by this Court of several valid Vietnamese trademarks under the guise of a Lanham Act violation of a U.S. trademark. Plaintiff attempts to sidestep its contemporaneous two and a half year battle in the proper trademark jurisdiction of Vietnam by attempting to involve this Court in matters of foreign policy.

Plaintiff's conclusory allegations are devoid of any **factual** details as to actual sales in U. S. commerce **by the Defendants** – a fundamental element of the claims raised by Plaintiff's First Amended Complaint (the "FAC"). While Plaintiff acknowledges that "[t]o prevail on a claim of trademark infringement, the plaintiff must show that **the defendants** used in commerce…" a colorable imitation of Plaintiff's mark (Plaintiff's Opposition (the "Opposition" or "Opp.") at 7:11-12) (emphasis added) fails to identify plausible facts set forth in the FAC as to how each California Defendant directly infringes the PEPTAN trademark.

The FAC simply never alleges that U.S. consumers are exposed to the accused JEX MAX product (hereinafter, the "Product") by any California Defendant in a way that would create the requisite likelihood of confusion. Even though the Product appears on St. Paul's website, that website clearly states the Product is for export only, and thus no confusion is possible. The St. Paul website also links to Eco Pharma's Vietnamese website; however, as explained below, the Vietnamese website also expressly states the Product is not sold to the U.S., so there is again no direct infringement by any named Defendant despite the speculation contained in Plaintiff's Opposition.

As for Plaintiff's claims for contributory infringement, the alleged direct infringers are presumably the third parties in Vietnam selling to the U.S., but neither the FAC nor the Opposition identify any facts by which the California Defendants either "actively induce" such third party sales nor any continued sales directly to those alleged third party sellers known to be infringing, as required for contributory liability. As Eco Pharma is the trademark owner in Vietnam and legally entitled to sell the Product in Vietnam, there can be no such infringement.

STETINA BRUNDA GARRED & BRUCKER
75 ENTERPRISE, SUITE 250
ALISO VIEJO, CALIFORNIA 92656
PHONE: (949) 855-1246; FACSIMILE: (949) 855-6371

The Ninth Circuit has clarified that (1) a complaint must "contain sufficient allegations of underlying facts to give fair notice and to enable to opposing party to defend itself effectively," and (2) "the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). Plaintiff has clearly failed to meet these pleading obligations, and the Motion to Dismiss (the "Motion") should be granted.

## II. NO DIRECT TRADEMARK INFRINGEMENT

A. *Direct Infringement Is Not Sufficiently Pled*

While the FAC alleges that the "[P]roduct is available for purchase in this judicial district, the United States and globally through various e-commerce websites such as Amazon.com, eBay, and others" (FAC at ¶48), it does not allege that the California Defendants are the ones selling the Product through these e-commerce websites. In fact, **the FAC actually exonerates the California Defendants who lawfully sell "the product in Vietnam" and it is admittedly unnamed "third party companies" that actually "sell and ship the product to the United States"** (FAC at ¶40). It is only these unnamed "third party companies" who are the accused of directly infringing by Plaintiff's FAC. Plaintiff's FAC is thus insufficient as a matter of law to state a claim for direct infringement against the California Defendants.

Plaintiff's Opposition illustrates how the FAC fails to set forth sufficient factual allegations to establish a cause of action against any of the California Defendants for direct trademark infringement. Plaintiff summarizes its allegations of direct infringement by stating that it "alleges that the California Defendants are offering for sell [sic] and selling these infringing products, and Plaintiff alleges e-commerce sites that such as Amazon.com, e-Bay and others are selling and shipping the infringing JEX PEPTAN MAX products into the United States." Opp. at 7:24 – 8:3. Even taken as true, these two allegations fail to adequately plead direct infringement as Plaintiff omits a crucial, essential element – it has not alleged (and cannot truthfully allege) that the California

Defendants are the ones actually selling the Product into the U.S. through these e-commerce websites.

Defendant St. Paul Brands does sell the Product to Eco Pharma, but the sales are admittedly for export only to Eco Pharma, who owns the trademark in Vietnam. FAC ¶¶ 11, 29. While Plaintiff alleges the Product is shown on St. Paul's website (FAC ¶35), **Plaintiff never alleges that U.S. consumers can buy the export-only Product from any California Defendant**, especially when the webpage cited in the FAC at ¶35 actually says the Product is for export only: Ngo Decl. at ¶ 9, Ex. C; Motion at 2:3-7.

Plaintiff's Opposition also alleges that the FAC sufficiently alleges direct infringement at paragraphs 56 and 58. Opp. at 11:13. These paragraphs, however, are devoid of factual allegations and nothing more than "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements" which "do not suffice." *Iqbal* at 678 (citing *Twombly* at 555). Indeed, none of the conclusory allegations of direct infringement are borne out by any facts pleaded in the FAC.

In fact, the California Defendants' Motion explains that customer confusion is not possible as a result of any sales to Eco because "Eco Pharma is the sole purchaser of St. Paul's products (FAC at ¶¶ 11, 29), and as the lawful owner of the PEPTAN trademark in Vietnam (FAC at ¶¶30-31), Eco Pharma is not confused when it purchases the accused product from St. Paul and receives that product in Vietnam." Motion at 6:25-28. Oddly, Plaintiff responds to this point in its Opposition by claiming that the statement "the California Defendants only sell to Defendant Eco Pharma" is "a fact outside the pleading" and should be ignored by the Court for the purposes of this motion. Opp. at 12:17-18. This is not outside the pleadings, because Plaintiff's FAC states this exact fact on page 4, lines 5-8, reproduced below:

> 5  Hoa Tham, Ward 12, Tan Binh District, Ho Chi Minh City. Eco Pharma is the
> 6  exclusive purchaser and distributor of Defendant St. Paul Brands' products for
> 7  resale in Vietnam and elsewhere including products that without Plaintiff's
> 8  authorization bear Plaintiff's trademark PEPTAN. On information and belief, Eco

FAC at ¶11.

To make matters worse, Plaintiff in its Opposition now claims that it "is not sure to whom the California Defendants sell the Product, and if it is only to Eco Pharma." Opp. at 13:3-5. This **directly contradicts** the contents of Plaintiff's FAC, where Plaintiff asserted that "Eco Pharma is the **exclusive** purchaser and distributor of Defendant St. Paul Brands' products for resale in Vietnam and elsewhere…" FAC at ¶11 (emphasis added).

Plaintiff also brings up topics completely irrelevant to it claim for direct infringement, arguing that "assuming Eco Pharma is the only customer directly [sic] from California Defendants, then it still does not insulate the California Defendants from causing confusion from the sales of these products… if it did then any trademark infringer could protect itself from trademark infringement claims by selling to a compatriot prior to selling to customers." Opp. at 13:5-10. But Plaintiff's scenario here has nothing to do with its claim for *direct infringement* – all Plaintiff has accomplished is to identify a reason why doctrines such as vicarious or contributory liability exist. An entity who "sell[s] to a compatriot prior to selling to customers" is not liable for direct infringement as a matter of law, because they are *not the direct infringer*. While such an entity might be liable for infringement under another theory, Plaintiff's argument here is unavailing to support of its claim for *direct infringement*, which requires the accused party to *directly infringe*.

### B. *Extraterritoriality Bars Enforcement of the Lanham Act*

Plaintiff's statement that it "owns and has registered the PEPTAN trademark virtually worldwide" (FAC at ¶20 and Opp. at 17:20) does not negate the fact that Plaintiff does not own the PEPTAN trademark in Vietnam (FAC at ¶16), nor does it permit Plaintiff to seek remedies from this Court that are far outside the territorial jurisdiction of the United States. Plaintiff seeks an order from a United States Federal Court "to cancel and withdraw [eleven] Vietnam Trademark Applications and Registrations comprising the trademark PEPTAN…" (FAC at ¶31 and at 16). Plaintiff

attempts to sidestep the ongoing two and a half year battle in the proper trademark jurisdiction of Vietnam by challenging this Court to put its judicial fingerprint onto matters of foreign policy, which "is the province and responsibility of the Executive [Branch]." *Department of Navy v. Egan*, 484 U.S. 518, 529 (1988).

Plaintiff's Opposition responds to the California Defendants' extraterritoriality arguments by alleging that *Steele v. Bulova Watch Co.*, 344 U.S. 280 (1952) stands for the proposition that "the Lanham Act extends to acts of trademark infringement and unfair competition in a foreign country." Plaintiff is wrong. In *Bulova Watch*, the Supreme Court expressly based its ruling on the fact that the petitioner no longer owned any valid foreign trademark registration, pointing out that:

> "[u]nlike the *Banana* Case [*American Banana Co. v. United Fruit Co.*, 213 U.S. 347 (1909)], whatever rights Mexico once conferred on petitioner its courts now have decided to take away… Mexico's courts have nullified the Mexican registration of 'Bulova'; there is thus no conflict which might afford petitioner a pretext that such relief would impugn foreign law. **The question, therefore, whether a valid foreign trademark registration would affect either the power to enjoin or the propriety of its exercise is not before us.** Where, as here, there can be no interference with the sovereignty of another nation, the District Court in exercising its equity powers may command persons properly before it to cease or perform acts outside its territorial jurisdiction."

*Bulova Watch* at 289 (Emphasis added).

Here, in contrast, Plaintiff admits that Defendant Eco Pharma is the lawful owner of issued Trademark Registration No. 248439 for the mark 'PEPTAN' in Vietnam (FAC at ¶31, Item B). Unlike in *Bulova Watch* where "Mexico's courts have nullified the Mexican registration of 'Bulova,'" Vietnam's courts have not nullified Eco Pharma's Vietnamese registration of "PEPTAN", despite Plaintiff having filed petitions in the Vietnamese courts requesting such nullification. *See* Motion at 4:26 (requesting judicial

notice of Plaintiff's nullification petition in Vietnam of Ex. B to the Ngo Declaration.[1]) Even if the Court declined to take judicial notice of these documents, the FAC admits that Eco Pharma owns the PEPTAN trademark in Vietnam (FAC at ¶31) and has not alleged that this trademark has been nullified or that Plaintiff owns the PEPTAN mark there.

As explained in the Motion, the Ninth Circuit in *Trader Joe's* states the law in these circumstances: "we construe statutes to avoid unreasonable interference with other nation's sovereign authority whenever possible…. Courts typically find a conflict with foreign law or policy when there is an ongoing trademark dispute or other proceeding abroad." *Trader Joe's v. Hallatt*, 835 F.3d 960, 972-973 (9th Cir. 2016). Plaintiff in its Opposition admits that Eco Pharma owns the rights to PEPTAN in Vietnam, and that the parties have an ongoing Vietnamese trademark dispute, stating that "the dispute between the parties over the ownership of the PEPTAN mark in that country [Vietnam] are still not resolved." Opp. at 18, n.2. This Court should not indulge Plaintiff and interfere in a matter that is for Vietnam and Vietnam alone to decide. There is a presumption against extraterritorial application of U.S. federal law to "avoid the international discord that can result when U.S. law is applied to conduct in foreign countries."[2] *See RJR Nabisco, Inc. v. European Cmty.*, 136 S. Ct. 2090, 2100 (2016). To now have a foreign corporation try attempt to use this Court to decide who gets to own registered trademarks duly issued by the Vietnamese government – or any other country for that matter – and sidestepping that country's legal system defies common sense, is disingenuous and has tremendous potential to negatively affect international relations.

---

[1] Plaintiff has not disputed the authenticity of these documents in the Opposition.
[2] If Plaintiff eventually prevails in its attempt to nullify Eco Pharma's trademarks in Vietnam, the relief sought by the instant action would be unnecessary. If Defendant Eco Pharma prevails, granting Plaintiff equitable relief in this action would significantly interfere with Defendant Eco Pharma's right to use the PEPTAN mark lawfully in Vietnam. The Court's interference is wholly unnecessary in either case.

### C. *Nominative Fair Use Bars This Action*

Plaintiff argues that the Court cannot consider a nominative fair use defense to an accusation of trademark infringement at the motion to dismiss stage. Plaintiff is incorrect. *Cf. Applied Underwriters, Inc. v. Licthenegger*, 913 F.3d 884, 889-893 (9th Cir. 2019) ("[T]he district court granted Defendant's motion to dismiss, concluding that 'Defendant's use of the Trademarks is nominative fair use'…. Defendants maintain, as the district court concluded, that their use of Plaintiff's marks constituted nominative fair use. We agree.")

## III. NO CONTRIBUTORY TRADEMARK INFRINGEMENT

To sufficiently plead contributory infringement, plausible facts must show that a defendant must have either (1) intentionally induced the primary infringer to infringe, or (2) continued to supply an infringing product to an infringer with the knowledge that the infringer is mislabeling the particular product supplied." *Perfect 10, Inc. v. Visa Int'l Serv. Ass'n,* 494 F.3d 788, 807 (9th Cir. 2007). Plaintiff Opposition asserts that it is proceeding under "both tests" (Opp. at 8:12) yet fails both counts.

### A. *Intentional Inducement Is Not Sufficiently Alleged*

"The standard for intentional inducement is fairly high. It requires that the contributory infringer do more than be able to reasonably anticipate the direct infringement." *Gibson Guitar Corp v. Viacom Int'l, Inc.*, 2013 U.S. Dist. LEXIS 70538 at *6 (C.D. Cal 2013). Even providing "critical support" to infringers fails to establish a claim for contributory infringement as plaintiff must at the very least allege "affirmative acts by Defendants suggesting that third parties infringe." *Perfect 10* at 807. Even sales to the Vietnamese trademark owner do not meet that requirement.

Plaintiff's Opposition responds incredulously to the proposition that "[t]he California Defendants seem to argue that Plaintiff must plead what California Defendants actually say to induce the sales of infringing goods by third parties." Opp. at 22:5-7. But this is indeed what the law requires. When a party's allegations "cite no affirmative acts by [d]efendants suggesting that third parties infringe" that party "has failed to plead a

STETINA BRUNDA GARRED & BRUCKER
75 ENTERPRISE, SUITE 250
ALISO VIEJO, CALIFORNIA 92656
PHONE: (949) 855-1246; FACSIMILE: (949) 855-6371

viable claim" for contributory trademark infringement. *Perfect 10* at 807. Allegations are insufficient when they "point[] to no 'clear expression' or 'affirmative acts' with any specific intent to foster infringement." *Id.* at 801. A party must allege "'specific acts intended to encourage or induce infringement" *Id.* at 802. "Inducement is a legal determination, and dismissal may not be avoided by characterizing a legal determination as a factual one. [The court] must determine whether the facts as pled constitute a 'clear expression' of a specific intent to foster infringement." *Id* at 803.

In Plaintiff's FAC, "the facts as pled" plainly do not "constitute a clear expression of a specific intent to foster infringement." As explained in the Motion, the "right to stop a product from being marketed and sold" is not sufficient for inducement. *Gibson* at 8; Motion at 21-22. Nor is labeling a product in English and marking it "Made in USA," or displaying it on an English-language website. *See Gallup, Inc. v. Business Res. Bureau (PVT.) Ltd*, 688 F.Supp. 2d 915 (N.D. Cal 2015). Because the FAC does not identify the requisite "clear expression of specific intent to foster infringement," the FAC does not allege contributory trademark infringement by active inducement.

### B. "Continuing to Supply" Is Not Sufficiently Alleged

Plaintiff fails to sufficiently allege that one has "continued to supply a product to an infringer with the knowledge that the infringer is mislabeling the particular product supplied." *Perfect 10,* 494 F.3d at 807. In Plaintiff's own words, "Plaintiff alleges that the California Defendants are selling the infringing product to Eco Pharma in Vietnam who is selling the infringing product for re-sale in the United States." Opp. at 8:16-18.

But this does not meet the legal requirements of "continuing to supply a product to an infringer with knowledge that the infringer is mislabeling that particular product." Eco Pharma cannot infringe any of Plaintiff's rights by labeling a product with the PEPTAN mark and selling it in Vietnam, because Eco Pharma is the lawful owner of the PEPTAN mark in Vietnam. FAC at ¶30-31. This is neither "mislabeling" nor infringement – it is legally authorized labeling and selling under domestic Vietnamese law by the Vietnamese trademark owner. Moreover, it is the downstream speculative and unnamed "others"

that are alleged to directly infringe by selling to the U.S., not Eco Pharma and not the California Defendants. FAC 11, 40, 65, 67.

Plaintiff's reliance on *Fonavisa, Inc. v. Cherry Auction, Inc.*, 76 F.3d 269 (9th Cir. 1996) does not negate its responsibility to adequately plead contributory infringement. The *Fonavisa* court found that there might be liability imposed for a swap meet organizer under a contributory infringement theory for "supplying the necessary marketplace for [infringing] sale[s] in substantial quality" based upon the fact that a company "is responsible for the torts of those it permits on its premises "knowing or having reason to know that the other is acting or will act tortuously." *Fonavisa* at 256. But Plaintiff's FAC alleges that the actual acts of direct infringement are the purported internet resales by "others" into the U.S. via e-commerce websites. (FAC at ¶65). The Ninth Circuit and other circuits throughout the country have consistently distinguished the logic of *Fonavisa* from activities conducted by third parties over the internet. "While the landlord of a flea market might reasonably be expected to monitor the merchandise sold on his premises [a party] cannot reasonably the expected to monitor the internet." *Lockheed Martin Corp. v. Network Solutions, Inc.*, 194 F.3d 980, 985 (9th Cir. 1999).

Because no theory of contributory trademark infringement has been sufficiently pleaded by Plaintiff's FAC, dismissal is appropriate.

## IV. THE RELATED CAUSES OF ACTION ARE INSUFFICIENTLY PLED

Each of the claims in the second, fourth, and fifth causes of action require substantially the same elements as in a cause of action for trademark infringement under the Lanham Act. As no claim for direct or contributory trademark infringement has been adequately and pleaded against the California Defendants by Plaintiff's FAC, no cause of action set forth any of Claims 2, 4, or 5 have been adequately pleaded either. Thus, dismissal is appropriate.

## V. DISMISSAL FOR VIOLATION OF RULE 8 IS APPROPRIATE

Plaintiff contends that by "alleging a connection between [the] companies and [the] individuals," (Opp. at 25:3-4) it is relieved of its burden of explaining the role played by

STETINA BRUNDA GARRED & BRUCKER
75 ENTERPRISE, SUITE 250
ALISO VIEJO, CALIFORNIA 92656
PHONE: (949) 855-1246; FACSIMILE: (949) 855-6371

each defendant accused of misconduct, but points to no case law in support of this proposition.

A plaintiff suing multiple defendants must allege the basis of the claim against each defendant individually. *See*, e.g., *Steinmetz v. Gen. Elec. Co.*, 2009 WL 3461133, at *2 (S.D. Cal. 2009) (quoting *Gauvin v. Trombatore*, 682 F.Supp. 1067,1071 (N.D. Cal. 1988)); *see also Yost v. Nationstar Mortg., LLC*, Civ. No. 13-745, 2013 WL 4828590, at *3 (E.D. Cal. 2013) (holding that defendants only receive fair notice of the claim if plaintiffs specifically identify which parties they allege committed each action). Conflating the actions of distinct individuals and entities is plainly insufficient. *See Gen-Probe, Inc. v. Amoco Corp.*, 926 F. Supp. 948, 961 (S.D. Cal. 1996) (collecting cases, in part for the proposition that a complaint may not "lump[] together… multiple defendants in one broad allegation"). But conflation is precisely what the Plaintiff does here. *See* FAC at ¶14 ("… each Individual Defendant, personally participated in together or separately controlled, directed, or is the alter ego of, or otherwise connected to, each, or multiple, Corporate Defendant(s), and all or some defendants acted in concert with, as agent or representative for, or at the request of, or on behalf of, and/or induced one or more of the other Defendants, or Individual Defendants identified in paragraphs 8 through 15 above of the wrongful acts complained of herein.")

Plaintiff has also not explained how many of the defendants are plausibly connected to this action at all. For example, Defendant A.Q. Pharmaceutical, is stated to have "creat[ed] the formula for the products," (Opp. at 25:9) but there is no explanation how a Defendant creating a formula for a product implicates that Defendant in accusations of trademark infringement, which has nothing at all to do with a product's formula. Likewise, the individual defendants are stated to have been named by virtue of "working for each of these California Corporate Defendants" (Opp. at 25:10), but no justification is provided for piercing the corporate veil and ascribing liability to individuals. Rather, it appears that Plaintiff has named many of the parties for the purpose of harassment and vexation, and in the case of the individual Defendants, solely on the

STETINA BRUNDA GARRED & BRUCKER
75 ENTERPRISE, SUITE 250
ALISO VIEJO, CALIFORNIA 92656
PHONE: (949) 855-1246; FACSIMILE: (949) 855-6371

basis that the Defendants "are all alleged to be family members." Opp. at 24:20-21.

Plaintiff's contends that "at this stage of the litigation, it is an unfair burden to require Plaintiff to describe each party's particular role in the infringing activities." Plaintiff is mistaken – at this stage of the litigation, it is Plaintiff's obligation to describe plausible facts for each party's individual liability so they can adequately defend. As Rule 11 requires an adequate pretrial investigation, if Plaintiff truly cannot specifically describe why a party has been named as a wrongful actor, then dismissal is required.

Plaintiff is incorrect in its allegation that "all that is required is that each party has been put on notice that they are being charged with committed acts of trademark infringement and unfair competition involving the PEPTAN trademark." Opp. at 25. The Rule 8 notice requirements require a complaint to set forth "who is being sued, for what relief, and on what theory, with enough detail to guide discovery." *Cf. McHenry v. Renne*, 84 F.3d 1172, 1178 (9th Cir. 1996). Plaintiff cannot avoid this obligation by claiming that the "facts will become clear through discovery." Opposition at 25:14.

Furthermore, Plaintiff qualifies almost all of its allegations with the phrase "on information and belief" but alleges no basis for such beliefs. *See Smith v. Barrett, Daffin, Frappier, Treder & Weiss, LLP*, Case No. 18-cv-06098-RS, at *9 (N.D. Cal. Jun. 19, 2019) ("This creates the inference that Plaintiffs likely lack knowledge of the underlying facts to support the assertion, and are instead engaging in speculation to an undue degree" and dismissal of the complaint is warranted "as it <u>provides no factual allegations to support Plaintiffs' conclusion beyond 'information and belief,' it is insufficient to satisfy the pleading requirements of Rule 8(a)(2).")</u>. Plaintiff cannot sue and then wait for discovery to formulate its case in the first instance. Rule 8 "… does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal* at 678-79.

It is totally unclear what theory is asserted to impose liability on all of the Individual Defendants, such as A.Q. Pharmaceuticals, and Advanced Pharmaceutical Services, including on what theory the corporate veil could even be pierced to establish liability for the individuals. Plaintiff's FAC alleges an agreement and conspiracy (FAC

¶¶ 28, 40, 41, 65), but Plaintiff in its Opposition expressly denies any civil conspiracy while in the same paragraph reiterating a conspiracy (Opp. at 23: 17-21) which is repeated at n. 2, pg. 18: 27-29. Further, all relief is demanded jointly of all Defendants, despite the fact that, by the very words of the FAC, much of the relief can only be accomplished by a single Defendant, especially as no claim for conspiracy is pled. Opp. At 23. For example, Eco Pharma is the only Defendant alleged to own any Trademarks in Vietnam (FAC at ¶30-32), but the prayer for relief demands that "Defendants cancel and withdraw all of their Vietnam Trademark Applications" (FAC at Prayer for Relief, ¶2). To adequately defend, Defendants' are entitled to know what plausible acts give rise to identified claims for legal liability.

## VI.   PLAINTIFF'S EVIDENCE IS INCOMPLETE AND OF NO AVAIL

Plaintiff in the FAC and Opposition attaches a screenshot it represents as being from Defendant Eco Pharma's website. FAC ¶42; Opp. at 4. Plaintiff claims that this image establishes that Defendant Eco Pharma makes the Product available for sale to U.S Customers on its website, and further implies the California Defendants' involvement because St. Paul's website links to Eco Pharma's website. Opp. at 4-5, 12-13; FAC ¶¶42-44.

But this image does not accurately depict Eco Pharma's website, which is entirely in the Vietnamese language, and not in English, as misleadingly presented by Plaintiff. *See* Ngo Supp. Decl., Ex. D. Rather, the image provided by Plaintiff (Opp. at 4, FAC at ¶¶ 42-43) appears to be a computer-generated, English-language translation that Plaintiff has created, which shows only a portion of that website. The portions that Plaintiff have omitted expressly show that sales to the U.S. do not occur on Eco Pharma's website. To the extent that the Court is inclined to consider the machine-translated contents of Eco Pharma's Vietnamese-language website at this time (for which Plaintiff has provided no certification), it should consider the entirety of the contents of that website, not the highly selective portion referred to by Plaintiff. *See Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006) (courts may consider documents referred to in complaint); *See also* FRE 106

("If a party introduces all or part of a writing or recording statement, the adverse party may require the introduction, at that time, of any other part… that in fairness ought to be considered at the same time.").

The exact webpage from which Plaintiff screenshot was taken, when translated into English via a machine translation, plainly states the opposite – that the only sales made via Eco Pharma's website are domestic Vietnamese sales. A visitor who clicks on the section marked "Delivery - Payment" is informed that the only delivery options are either to "Ho Chi Minh City and Hanoi" or "the remaining provinces and cities nationwide." *See* Ngo Supp. Decl. at Exhibit E.

Eco Pharma's website also contains a FAQ (frequently asked questions) section. *See Ngo Supp. Decl.*, Exhibit F. When translated into English via a machine translation tool, this FAQ includes the question "Does Ecogreen products ship abroad?" and the answer is stated as "Currently our company only applies domestic delivery service." *See* Ngo Supp. Decl., Exhibit G. The full text of the relied-upon website in both the FAC and Opposition contradicts Plaintiff's assertion of sales to the U.S. by any Defendant, and illustrates the lack of plausible allegations as required to plead a claim. This evidence is admissible in this Rule 12(b)(6) Motion to refute Plaintiff's Opposition, as it also appears in the FAC ¶¶42-43. *Marder*, 450 F.3d at 448.

Further, the website indicates the purchase price in VND (Vietnamese Dong – the official currency of Vietnam), the domain name includes the country code of Vietnam (".vn"), and the language found on the website is entirely in Vietnamese (including the "chat" function shown in Plaintiff's "screenshots." Common sense clearly indicates that that the Product is intended for the stream of commerce in Vietnam.

### VII. THE FALSE DESIGNATION OF ORIGIN CLAIM IS NOT PLED

Plaintiff claims that reliance on *Daystar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 38 (2008) to negate liability for false designation of origin is "nonsensical" because *Daystar* is a copyright case. Opp. at 21:6-17. To the contrary, it makes great sense because the *Daystar* Court interpreted the "false designation of origin"

requirement of §43(a) as referring to the origin of the tangible goods, not the author of the idea or concept embodied in a product." Because the FAC alleges that the Defendants are the manufacturer of the Product (FAC ¶¶ 6, 23, 53, 66), there is no false designation of origin.

## VIII. DISMISSAL AND DISCOVERY LIMITATIONS ARE REQUIRED ON CONSPIRACY

The Opposition states: "Here, Plaintiff does not make any separate claim for civil conspiracy but rather allege all the Defendants worked together – i.e., 'conspired' – to infringe Plaintiff's PEPTAN trademark." Opp. at 23: 17-19. Denying that conspiracy is asserted and in the same sentence asserting conspiracy, makes it impossible to understand the legal relevance of the alleged "conspiracy" and agreements, and leaves Defendants unable to adequately respond to the pleadings.

If Plaintiff is saying there is no separate tort of conspiracy, the Defendants agree. But a civil conspiracy can make co-conspirators liable for the acts of the co-conspirators and the FAC and Opposition attempt to allege a conspiracy. FAC ¶ 20 & 41 (agreement and conspiracy), 40 & 65 (conspiracy and agreement to enable reselling to the US); Opposition at 18:27-29 (conspiracy).

But regardless of the conclusory conspiracy allegations, a conspiracy requires an underlying tort. *Entm't Res. Grp. Inc. v. Genesis Creative Grp., Inc*. 122 F.3d 1211, 1228 (9th Cir. 1997). The FAC does not sufficiently allege that any California Defendant has committed any act that would arise to direct or contributory trademark infringement, or any related cause of action. This failure to plead an underlying tort negates any basis for a civil conspiracy.

Given the lack of a basis for civil conspiracy and the apparent admission that no civil conspiracy is being asserted, the California Defendants request the decision on this Rule 12(b)(6) motion made clear that allegations of conspiracy and agreements to infringe or enable others to infringe, are not part of the lawsuit or discovery.

///

## IX. CONCLUSION

Based on all of the foregoing, The California Defendants requests that the Court dismiss Plaintiff's First Amended Complaint in its entirety, with prejudice.

Dated: July 1, 2019         **STETINA BRUNDA GARRED & BRUCKER**

By: /s/Gregory K. Clarkson
Matthew A. Newboles
Gregory K. Clarkson

Attorneys for the California Defendants

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with this document via the Court's CM/ECF system on July 1, 2019.

<u>/s/Gregory K. Clarkson</u>
Gregory K. Clarkson

REPLY IN SUPPORT OF MOTION TO DISMISS